GOERLINGER, Appellant, vs. JUETTEN and others,
Respondents.

*March 13—April 15, 1941.*

For the appellant there was a brief by *Eberlein & Eberlein* of Shawano, and oral argument by *M. G. Eberlein.*

For the respondents the cause was submitted on the brief of *Roy H. Morris* of Clintonville.

MARTIN, J.   It appears that on or about April 6, 1926, defendants purchased from plaintiff certain garage property in the city of Clintonville, including the equipment in said garage and stock on hand.   In part payment of the purchase price defendants gave the plaintiff their joint and several promissory note on which this action was brought.   At the time the note was given defendants had organized a copartnership consisting of themselves, which copartnership carried on its business under the firm name and style of Triangle Motor Company.   In January, 1928, defendants organized a corporation known as the Triangle Motor Company, and transferred to the corporation all of the partnership assets.   Defendants contend that the plaintiff knew of the transfer from the copartnership to the corporation, and that plaintiff accepted the corporation as his debtor on the note; in other words, that there was an assumption of the debt by the corporation, a consent to such assumption by the plaintiff, and a release of the defendants from personal obligation on the note.   Each defendant in his separate answer alleges that after the corporation was formed, the following payments were made on the note by the corporation:

| | | |
|---|---|---|
| March 31, 1928 | $138.00 | Interest |
| May 4, 1929 | 138.00 | Interest |
| September 9, 1930 | 142.00 | Principal and Interest |
| November 7, 1930 | 800.00 | Principal |
| July 28, 1931 | 128.52 | Interest |
| December 31, 1934 | 174.47 | |
| October 17, 1935 | 85.81 | |
| December 31, 1935 | 33.53 | |
| December 31, 1936 | 155.86 | |
| March 18, 1937 | 66.95 | |

At the time of the commencement of this action there was a balance of $1,500 due on the principal of said note and accrued interest in the sum of $203. The note provided for an attorney fee of ten per cent. In each of the separate answers two defenses are pleaded. First, that the plaintiff accepted

and acknowledged the Triangle Motor Company (the corporation) as his debtor, and, second, that none of the defendants made any payment of money to the plaintiff on said note after January, 1928, and therefore the cause of action alleged did not accrue within the six years before the commencement of this action. As to the first defense, the trial court said:

"It is the contention of the defendants that this obligation [the debt evidenced by the note] was assumed by the corporation and that the plaintiff agreed that he would look to the corporation for his payments herein, and that the defendants were completely released from such obligation. *I hold that the evidence does not establish this fact.*"

This finding is sustained by the great weight and clear preponderance of the evidence. As to the defense that the six-year statute of limitations (sec. 330.19 (2)) had run against plaintiff's cause of action on the note, the court said:

"The more serious proposition is involved as a matter of defense as to the defendants, Howard Anthes and Jack Juetten. It is undisputed by the testimony that neither of these defendants made any of the payments or authorized any of the payments to be made on this note. That all of these payments as made were made by the defendant, Frank Bohman. It is contended by the defendant, Frank Bohman, that he made these payments not for himself or for any of these defendants, but only as president of the Triangle Motor Company. The plaintiff herein was dealing with Frank Bohman as an individual and had a right to assume, and no doubt did assume, that the payments were made by him for himself on this indebtedness. However, not any of these payments being made by the other two defendants, Anthes and Juetten, and not being authorized by them, it must be held that the statute of limitations as far as they are concerned applies and that the claim is barred as to these two defendants."

While the corporation was a separate entity, the defendants owned all of the corporate stock and served as its directors

and officers. They pleaded and also testified that payment of the note in question, which was their joint and several obligation, was assumed by the corporation. They, of course, by having the corporation assume their obligation to the plaintiff on the note, could not, without the plaintiff's consent, discharge their personal liability on the note. The trial court found that the plaintiff did not agree to look to the corporation for payment of the note, in other words, that there was no novation. All of the defendants knew that the assets of their corporation were used from time to time to discharge their individual obligation on the plaintiff's note. They all knew that on November 7, 1930, the corporation sold an automobile to the plaintiff for $800 upon the understanding that plaintiff credit the purchase price of the automobile on the note. It also appears that through the years 1934 to 1937, inclusive, plaintiff had an open charge account at the Triangle Motor Company garage and that by arrangement with defendants, the plaintiff's account was credited on the note. None of the defendants ever asked the plaintiff to surrender their note and to take instead a note of the corporation. Defendant Juetten testified:

"I knew the corporation was making the payments and was satisfied that they make them. There was nothing said who would take care of it but it was understood as a general rule we would take care of it. I think Anthes understood the corporation would continue to take care of it the same as in the past."

The defendant Anthes kept the books for the copartnership, also for the corporation after it was organized. When plaintiff bought his automobile in 1930, Anthes made the credit entry of the $800, representing the purchase price of the automobile, on the back of the plaintiff's note. There is no dispute as to the payments made nor as to the source of the credits applied on the note. We have carefully examined all the evidence and must hold that there is no evidence to

sustain the finding that the defendants Juetten and Anthes made no payments nor authorized any payments to be made on said note after 1928. The following illustration covers the present situation. Suppose A owes B $1,000 on a note, and A asks C to make a payment of $500 for him on B's note. Would the payment by C toll the statute of limitations in an action thereafter brought by B against A on the note? Clearly, it would.

Defendants rely on sec. 330.47, Stats., which provides:

"If there are two or more joint contractors or joint executors or administrators of any contractor no one of them shall lose the benefit of the provisions of this chapter [ch. 330, Stats.], so as to be chargeable, by reason only of any payment made by any other or others of them."

In *Accola v. Giese,* 223 Wis. 431, 433, 271 N. W. 19, the court had occasion to apply the provisions of this section to the facts in that case. The court there said:

"This statute changed the common-law rule that payments by one comaker tolled the statute of limitations as to both. [Citing cases.] Notwithstanding the statute, a joint obligor may acquiesce in or consent to a payment made by his joint contractor and thus toll the statute as to him. [Citing cases.]"

While the Triangle Motor Company was not a joint obligor on the note, the payments made by the corporation were made for the individual defendants who were joint obligors. The defendants are now in the same position as A in the above illustration. That is, the three defendants made arrangements with their corporation to pay their indebtedness to the plaintiff. The payments were made with their knowledge and consent. Having participated in this arrangement and acquiesced in the payments, they are now in the same situation as if they had each, individually, contributed to each payment made.

The plaintiff is clearly entitled to judgment against all of the defendants for the amount of the unpaid principal, together with accrued interest, plus the ten per cent attorney fee as provided for in the note.

Plaintiff contends that he should not have been required to give the bond as provided in sec. 327.27 (2), Stats., as a condition precedent to the entry of judgment. This section provides as follows:

> "*Recovery on lost note.* (1) In any action or defense founded upon any negotiable promissory note or bill of exchange, if it appear on the trial that such note or bill was lost or was destroyed without the owner's fault, while it belonged to the party claiming the amount due thereon, parol or other evidence of its contents may be given on such trial; such party shall be entitled to recover or set-off the amount due thereon as if such note or bill had been produced.
>
> "(2) But to entitle a party to such recovery he shall execute a bond to the adverse party in a penalty at least double the amount of such note or bill, with two sureties to be approved by the trial court, conditioned to indemnify the adverse party, his heirs and personal representatives against all claims by any other person on account of such note or bill and against all costs and expenses by reason of such claim."

The above subsections are applicable whether the plaintiff is a holder in due course under sec. 116.57, Stats., or a holder other than in due course under sec. 116.63. It will be noted that under the provisions of sub. (2) of sec. 327.27 the furnishing of the bond therein mentioned is mandatory. It provides that the party entitled to a recovery shall execute a bond to the adverse party in a penalty at least double the amount of such note or bill, with two sureties to be approved by the trial court. The statute makes no reference as to how long the bond shall continue in force. We are of the view that there is no occasion to continue the bond in force beyond the statutory period of limitations from the date of the last

credit on the note or bill of exchange, subject, however, to a condition that if the lost note or bill is found prior to the expiration of the statutory period of limitations, if same be canceled and surrendered, the obligations of the bond shall terminate.

The plaintiff has moved that the appeal of the defendant Bohman be dismissed for the reason that same was not taken and perfected in time. It appears that defendant Bohman served his notice of appeal upon the plaintiff's attorney on the 14th day of February, 1941, and served a copy thereof upon the clerk of the circuit court of Waupaca county on February 17, 1941, but did not furnish the undertaking required by sec. 274.11 (3), Stats. Sub. (2) of said section provides that the appeal shall be deemed perfected on the service of the undertaking for costs, or the deposit of money instead, or the waiver thereof. There was no waiver of the required undertaking in the instant case, therefore the plaintiff's motion to dismiss the appeal of defendant Bohman must be granted.

*By the Court.*—That part of the judgment in favor of the defendants Jack Juetten and Howard Anthes dismissing the plaintiff's complaint as to them with costs is reversed, and cause is remanded with directions to enter judgment in favor of the plaintiff Ferdinand Goerlinger against defendants Jack Juetten and Howard Anthes for the full sum due on the note sued upon for principal, accrued interest, ten per cent attorney fee, and costs, the plaintiff to execute a bond as provided in sec. 327.27 (2), Stats., as a condition precedent to the entry of a judgment against said defendants. The appeal of the defendant Frank Bohman from that part of the judgment in favor of the plaintiff and against him is dismissed.